

777 THIRD AVENUE 22ᴺᴰ FLOOR
NEW YORK, NEW YORK 10017
PHONE: (646) 201-9100
FAX: (646) 705-0049
WWW.TULLYLEGAL.COM
EMAIL: INFO@TULLYLEGAL.COM

_VIA E-FILING_

July 30, 2019

Honorable Valerie Caproni
United States District Court
Southern District of New York
40 Foley Square, Courtroom 443
New York, NY 10007

> RE:  _Korolyshyn, et al v. Kleinfeld, et al_
> Civil Case No.: 19-cv-02665 (VEC)
> Amended Letter Motion for Approval of Settlement

This is a joint request for approval of the Settlement Agreement in the above Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") action.[1] _See, Cheeks v. Freeport Pancake House, Inc._, 796 F.3d 199, 206 (2d Cir. 2015). The fully executed Settlement and Release Agreement ("Agreement") is attached hereto as Exhibit A.

## I.    Background and Claims

On or about March 25, 2019, Plaintiff commenced an action against the Defendants Kleinfeld, Kleinfeld Bridal Corp., and KBC Holding LLC (collectively hereinafter "Kleinfelds" or "Kleinfeld Bridal") in the United States District Court for the Southern District of New York. Korolyshyn's complaint alleged wage and hour claims under the Fair Labor Standards Act ("FLSA") and the New York Labor Law and its supporting regulations/order ("NYLL").

Kleinfeld Bridal is a wedding dress store in midtown Manhattan. According to Korolyshyn, she worked for Kleinfelds from approximately May 2016 until November 2018 as a non-exempt, hourly paid "employee" as defined by the FLSA under 29 U.S.C. § 203(e)(1). As alleged in her _Complaint_, Korolyshyn was required to work hours in excess of forty (40) hours per week, and was not paid the required one and half times her straight pay for all hours worked in excess of forty (40) hours per week. _See Compliant_ ⁋ 9. Korolyshyn further alleges she was not furnished with a proper wage statement as required under the New York Labor Law. _See Compliant_ ⁋ 89. Korolyshyn alleges was not furnished with proper wage notices as required under the New York Labor Law. _See Compliant_ ⁋ 93. Furthermore, Korolyshyn alleges she was not paid spread of hours pay as required under New York Labor Law. _See Compliant_ ⁋ 99. Given these claims,

---

[1] This is an amendment to the nearly identical motion timely filed by Plaintiff's counsel on July 29, 2019. _See_ Dkt # 14. There were minor errors in calculation contained in the July 29, 2019 filing that have been corrected for the instant filing.

Korolyshyn filed a complaint for unpaid overtime, spread of hours wages and statutory record keeping violations under the FLSA and NYLL.

On or about April 26, 2019, United States District Judge Hon. Valerie Caproni ordered the parties to mediation. *See* Dkt. #9. On or about June 18, 2019, the mediator issued the Final Report of Mediator indicating to the Clerk that the parties had reached settlement on all issues. *See* Dkt. 11. Thereafter, the Court issued an Order on June 20, 2019 ordering the parties to, either file a joint letter motion requesting that the Court approve the settlement agreement, or, alternatively, provide documentation of the approval by the Department of Labor (DOL), and the instant letter motion follows.

The parties' settlement, attached hereto as Exhibit A, delineates the following payments:

Total Settlement = $45,000.00
Oksana Korolyshyn (Korolyshyn) = $29,389
Tully Rinckey PLLC Out of Pocket Costs and Disbursements = $918.69
Tully Rinckey PLLC Attorneys' Fees = $14,692.30 (based on a thirty-three (33.33%) fee on the gross recovery of Forty-Five Thousand Dollars and Zero Cents ($45,000.00), minus out of pocket costs and disbursements Percent on the gross recovery)

II.    Standard for Review

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc.* 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig.*, No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement).

In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-CV-86, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of the circumstances, including the following factors: (1) the Korolyshyn's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion. *Wolinsky, supra* at 335.

III.    The Settlement Reached Between the Parties

After the mediation order was issued, Kleinfelds provided Korolyshyn with timesheets reflecting Korolyshyn's hours worked and pay stubs reflecting wages paid. Upon review of those time sheets and discussions with Kleinfelds's counsel, it became clear that there might not be an overtime violation of the type alleged in Korolyshyn's Complaint. Kleinfelds's pay periods were based on a semi-monthly approach that did not always correspond to the defined standard workweek for purposes of overtime calculation. This made it so that a strict reading of the paystubs in Korolyshyn's possession at the time of the filing of the Complaint appeared to demonstrate an overtime violation, but a thorough comparison of the time records and the pay stubs revealed no such violation.

Nonetheless, Korolyshyn identified what she believed to be other violations of the New York State Labor Law, including potentially a spread of hours violation. Kleinfelds vehemently denies that there are violations of the New York Labor Law present with regard to these issues, and the parties have a *bona fide* dispute as to the facts and law underpinning these claims.

For example, under the New York Labor Law, there is a dispute as to whether or not spread of hours pay applies to employees outside of the restaurant industry and employees who make more than the minimum wage. Korolyshyn was a seamstress and earned more than the hourly minimum wage, and does *not* work in a restaurant. Korolyshyn argued, during settlement negotiations, that the spread of hours pay applies to all employees in New York State, regardless of whether they make more than minimum wage. *See, e.g., Doo Nam Yang v. ACBLCorp., 427 F.Supp.2d 327, 339-40 (S.D.N.Y. 2005)*. Kleinfelds argued that the statute only applies to individuals earning the minimum wage owed). See, e.g., *Ellis v. Common Wealth Worldwide [Chauffeured] Transp. Of NY, LLC, No. 10-CV-1741 (DLI)(JO), 2012 U.S. Dist. LEXIS 40288, 2012 WL 1004848, at *8 (E.D.N.Y. Mar. 23, 2012)* (Irizarry, C.J.).

A spreadsheet showing a computation of the value of the spread of hours allegation is attached hereto. The damages reflect pay from January 1, 2018 to November 8, 2018, which is three hundred and eleven (311) days of employment. Korolyshyn was employed by Kleinfelds for approximately nine hundred and fourteen (914) days, making the sample period representative of approximately 34% of Korolyshyn's employment. During the sample period, the spread of hours damages alleged were approximately $1,580.00. By projecting the sample period for the entire period of employment, Korolyshyn calculates approximately $4,649.41. Considering liquidated damages, this would bring the damages to $9,298.82. This damages projection, assumes, of course, that spread of hours premium pay is required for employees who are covered by the Miscellaneous Industries and Occupations Wage Order and who make more than the applicable minimum wage. As described above, the parties disagree on this contention.[2]

---

[2] It is also important to note that settlement of claims pursuant to the New York Labor Law do not require judicial approval. *See, e.g., Wright v. Brae Burn Country Club, Inc.*, 2009 U.S. Dist. LEXIS 26982, 2009 WL 725012, at *4 * (S.D.N.Y. Mar. 20, 2009)("there is no express restriction on the private settlement of waiver of wage and hour claims under New York law.").

Failing to provide accurate wage statements are $250 per violation, with the statutory cap on damages at $5,000. *See* N.Y. Lab. Law § 198(1-d). Failure to provide a wage notice could have made Kleinfelds liable in the amount of fifty ($50) dollars for each work week that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars ($5,000.00), together with costs and reasonable attorneys' fees. *See* N.Y. Lab. Law § 198(1-b). Therefore, if Korolyshyn were to prevail on the spread of hours claim, the approximate maximum damages, including the statutory damages, would be $19,298.82, which is actually less than the approximate $29,389 Korolyshyn will be due under the Settlement Agreement.

There is another substantive legal and factual dispute related to rounding. Korolyshyn believes that the rounding uniformly hurt Korolyshyn and Kleinfelds disagreed. The rule is that "rounding policies that on average, favor neither overpayment nor underpayment of wages are permissible, while those that systematically undercompensate employees are unlawful." *See Boone v. Primeflight Aviation Servs.*, 2018 U.S. Dist. LEXIS 28000, *16 (E.D.N.Y. Feb. 20, 2018). What constitutes systematic under compensation ends up being a hotly disputed issue. Taking the same Sample Period cited above, Korolyshyn estimated approximately 8.23 hours in unpaid time due to Kleinfelds's rounding practice. This is the equivalent of approximately $85.59. Projected across the entirety of Korolyshyn's Complaint, this is the equivalent of approximately $251.73. Kleinfelds denies that the rounding practice was unlawful at all, and that, on average, it favored neither overpayment nor underpayment.

Considering the significant factual and legal disputes, Korolyshyn believes that the $45,000.00 settlement amount is a fair compromise to resolve this case without further litigation, and without subjecting both parties to the time and expense of more extensive discovery and ongoing litigation. While Korolyshyn was confident that she would prevail on the disputed issues of law and fact, there are *bona fide* disputes as to these issues.

The settlement agreement reflects a reasonable compromise of the disputed issues and any actual or potential claims in the totality of the circumstances. In addition, the Parties believe that the certainty of settlement is better than the uncertain outcome of protracted litigation, and Korolyshyn prefers to receive her proceeds without the inevitable delay and significant risks that continued litigation would entail. Korolyshyn is ecstatic about the amount. Lastly, each settling party is represented by counsel experienced in wage and hour practice.

IV.    <u>Korolyshyn's Range of Possible Recovery</u>

As stated above, the proposed settlement represents very close to full value of Korolyshyn's claim, including liquidated damages and her statutory damages. This is certainly toward the higher end of the range of reasonableness of recovery, particularly after considering the obstacles Korolyshyn faces with the significant disputes in the case law over most of the central claims. *See*, *Rodriguez-Hernandez v. K Bread & Co.*, No. 15- cv-6848 (KBF), 2017 U.S. Dist. LEXIS 78034, at *10 (S.D.N.Y. May 23, 2017) (approving a settlement of 26% of potential damages given "bona fide disputes" between the parties and litigation risks). The settlement will also enable Korolyshyn to avoid the burden of testifying, and the hardship of waiting for the payment of any recovery.

Part of the purpose of settlement is to avoid a trial on the merits because of the uncertainty of the potential outcome. *Morris v. Affinity Health Plan*, 859 F.Supp.2d 611, 620 (S.D.N.Y. 2012). In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the Korolyshyn . . . against the relief offered by the Settlement." *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *8 (S.D.N.Y. Apr. 16, 2012). The settlement represents a reasonable compromise of the *bona fide* disputes in this matter. A "presumption of fairness, adequacy and reasonableness may attach to a . . . settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotations omitted).

The Parties participated in arm's length settlement discussions in order to arrive at this settlement. As such, the settlement involves a clear and *bona fide* wage dispute in contested litigation, which was resolved through an arm's-length settlement process.

V.    Possibility of Fraud or Collusion

This settlement was reached after intensive negotiations between experienced counsel who duly counseled their respective clients on the benefits and risks of continued litigation. Moreover, Kleinfelds provided significant time record and pay stub documentation to Korolyshyn. "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 05 CIV 10240, 2007 WL 2230177, at *4 (S.D.N.Y July 27, 2007). There was no fraud or collusion in the present matter and the Court should approve the settlement.

VI.   Korolyshyn's Counsel is Entitled to a Reasonable Fee of 33.33% of the Settlement Amount

Counsel is entitled to reasonable attorneys' fees to compensate for work in recovering the unpaid wages and statutory violations under the FLSA and NYLL.[3] Under the retainer agreement, Korolyshyn's counsel is entitled to a forty-percent (33.33%) fee on the gross recovery of Forty-Five Thousand Dollars and Zero Cents ($45,000.00), minus out of pocket costs and disbursements ($45,000.00 minus $918.69 = $44,081.31) which equates to Fourteen Thousand, Six Hundred and Ninety-Two Dollars and Thirty Cents (14,692.30), with the remainder of $29,389 due to Korolyshyn.

Korolyshyn's counsel is entitled to reasonable attorneys' fees. Tully Rinckey PLLC has expended approximately one hundred and twenty-three and one half (123.5) hours on this case, not including all of the time for the instant motion and settlement compliance monitoring. *See* Time Records, attached hereto as Exhibit B. "To determine the quality of representation, courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in

---

[3] Not all courts in this circuit have read the *Cheeks* decision to require this assessment. *See Gutierrez v. 352 East 86th St. Rest. Inc.*, 2016 U.S. Dist. LEXIS 23967, *3 -4 n. 1 (S.D.N.Y Feb. 19, 2016) ("I do not understand the FLSA to regulate the relationship between the employee as plaintiff and his counsel or to alter the freedom of contract between a client and his attorney").

the lawsuit." *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144, at *31 (S.D.N.Y Jan. 31, 2007) (*citing In re Global Crossing and ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004)).

I have been engaged in the practice of law as an Associate at Tully Rinckey PLLC since 2015, and I have worked in the labor and employment field for over five (5) years. I was recently promoted to Senior Associate. I was admitted to practice law in the State of New York in May 2014. I earned my law degree from American University, Washington College of Law, in May 2013. In May 2009, I earned my Bachelor's Degree from Goucher College.

I have focused primarily on plaintiffs' employment matters in discrimination and wage and hour matter. I have also been selected to the New York Super Lawyer's Rising Star List for the years 2016, 2017 and 2018. My normal hourly rate for wage and hour actions is $250.00 per hour and the Korolyshyn is requesting this rate for my work in this case. This rate is reasonable based on my experience. *See, Solnin v. Sun Life & Health Ins. Co.*, No. 08-cv-2759 (DRH)(AYS), 2018 U.S. Dist. LEXIS 168047, at *9 (E.D.N.Y. Sep. 28, 2018) (awarding mid-level associate with 5 years of experience a rate of $275 and noting proper rate for senior associates is up to $325 per hour and for experienced partners is between $300-$450 per hour in this district); *Remache v. Mac Hudson Grp.*, No. 14 CV 3118 (AMD)(RML), 2018 U.S.Dist. LEXIS 154099, at *63 (E.D.N.Y. Sep. 7, 2018) (In a FLSA default action awarding an hourly rate of $275.00 for associates with 4-9 years of experience).

The other signing attorney on the case, Partner Michael Macomber, has been engaged in the practice of law at Tully Rinckey, P.L.L.C. since September 2009. Mr. Macomber is duly admitted to practice law in the State of New York (January 2010) and Massachusetts (December 2009) He is admitted to practice before the United States District Court for the State of New York Northern District, Western District, Southern District, and United States District Court for the Central District of Illinois. He is also admitted to practice before the Court of Appeals for the Federal Circuit, the Second Circuit, and the Naval and Marine Court of Criminal Appeals.

Since being admitted to practice law, Mr. Macomber's entire legal career has been dedicated to employment litigation and prosecuting civil rights violations. His practice at Tully Rinckey PLLC is focused on state and federal sector employment law. Mr. Macomber is the Section Chair of the firm's New York State Employment Group as well as a Practice Area Chair in the Federal Sector Labor and Employment Group. His practice focuses on federal and private sector employment law claims, including claims involving the Fair Labor Standards Act (FLSA), New York Labor Law, New York Executive Law the Uniformed Services Employment and Reemployment Rights Act (USERRA), Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Age Discrimination in Employment Act (ADEA), Family and Medical Leave Act (FMLA), National Labor Relations Act (NLRA), and Qui Tam claims. His hourly rate for cases similar to this is $375.00 per hour.

There are other partners and associates who contributed work to this case as part of the collaborative approach at Tully Rinckey PLLC. In the interest of brevity, the backgrounds and rates of all participating attorneys will not be outlined here. Instead, the attached spreadsheet will show the relevant entries in this matter. At the rates of each of the individuals who worked on the case, the total attorneys' fees are approximately Thirty-Four Thousand and Two Hundred and

Twelve Dollars and Fifty Cents ($34,212.50), making the fee received significantly less than the fees incurred.

Furthermore, it should be noted that this case was originally filed as a class and collective action, and as such, was given the resources appropriate for such an action. Indeed, as outlined above, the possible liability theories in this case (e.g., spread of hours, rounding, and late payment) are at the cutting edge of New York State wage and hour law and are hotly disputed legal issues currently pending in the New York federal state courts. Therefore, there was a substantial amount of extensive legal research and damages estimates above and beyond a normal overtime case.

The out of pocket expenses are Nine Hundred and Eighteen Dollars ($918.00) and consist mainly of the federal court filing fee, service costs, and Lexis Nexis research costs. The spreadsheet attached hereto delineates those costs. *See* Exhibit C. The preceding out of pocket expenses are fair and reasonable and ordinarily charged to the file in wage and hour actions.

VII.    Conclusion

For the reasons set forth above the Parties jointly request that the Court approve the Settlement Agreement. Korolyshyn further requests that the Court approve the attorneys' fees award reflected in the Agreement as fair and reasonable.

Dated:        July 30, 2019                          Respectfully submitted,

_____
Nicholas A. Devyatkin, Esq.
TULLY RINCKEY PLLC
777 Third Avenue, 22nd Floor
New York, NY 10017
T: (646) 201-9100
F: (646) 705-0049
ndevyatkin@tullylegal.com
Bar Roll No.: ND5191

Eli Z. Freedberg
LITTLER MENDELSON, P.C.
9900 Third Avenue, 7th Floor
New York, New York 10022
212.583.9600
*Attorneys for Kleinfelds*